BYE, Circuit Judge,
dissenting.
I respectfully dissent. The Board of Immigration Appeals (BIA) did not give specific and cogent reasons for crediting lawyer Samuel Omwenga’s version of events and discrediting those provided by Josphine Gitau. See Celaj v. Gonzales, 468 F.3d 1094, 1097 (8th Cir.2006) (indicating adverse credibility determinations must be supported by specific and cogent reasons for disbelief). As such, the BIA abused its discretion by failing to consider all factors presented by Ms. Gitau, and distorting important aspects of her claim. See Habchy v. Gonzales, 471 F.3d 858, 861-62 (8th Cir.2006) (setting forth the circumstances under which this court may find the BIA abused its discretion).
Between the two versions of what transpired regarding Ms. Gitau’s attendance at the hearing scheduled for February 13, 2006, she is more credible than is Mr. Omwenga. With an eventually successful widower’s visa petition pending, Ms. Gitau had nothing to gain and everything to lose by failing to attend her removal hearing. On the other hand, Mr. Omwenga had been disciplined previously for advising a client not to appear at an immigration hearing, which resulted in the client being deported in absentia. In other words, Mr. Omwenga was a biased witness because he had an incentive to avoid being disciplined again, while Ms. Gitau was not.
I begin with an examination of the inconsistencies and contradictions in Mr. Omwenga’s version of events, something notably absent from the BIA’s analysis. First, he gave inconsistent explanations for why Ms. Gitau failed to attend the February 13 hearing. In the motion to rescind the in absentia order that he signed and filed with the BIA on Ms. Gitau’s behalf (hereinafter motion to rescind), he claimed Ms. Gitau failed to appear because she misunderstood what hearing he told her not to worry about when she called him in a panic on December 27, 2005, upon her finding out one of the pending cases had been closed.
*910 Respondent [Ms. Gitau] did not come to court because she mistakenly believed that her case was closed, based on the information provided by the officer she saw at the CIS window on December 27, 2005 and also because when [Ms. Gitau] called her counsel [Mr. Omwenga] and he said not to worry, she thought bought (sic) meant that she did not have to come to court.
J.A. at 234.
Conversely, in the July 26, 2006, letter Mr. Omwenga submitted to the Office of Bar Counsel in response to Ms. Gitau’s disciplinary complaint, he claimed Ms. Gi-tau did not attend the hearing because she “seemed to be concerned that she did not want to travel to Kansas City 3 hours away from her home if she did not have to....” Id. at 33. The BIA never considered this inconsistency in Mr. Omwenga’s story.
Second, Mr. Omwenga gave different explanations regarding the advice he gave Ms. Gitau. In the motion to rescind, he claimed of telling Ms. Gitau not to worry about a case which had been closed, and she misunderstood and believed he told her not to worry about attending the February 13 hearing. But in the July 26 letter he filed with the Office of Bar Counsel, he claimed that just five days prior to the February 13 hearing he specifically advised her to attend the hearing.
On February 8, 2006, I received a phone call from Ms. Gitau wanting to know what she was going to do with her February 13, 2006 court date now that the 1-130 petition was closed. I told Ms. Gitau that she should still go to coui-t because her 1-360 petition remained pending and that I would ask the judge to give us another continuance on that ground. Ms. Gitau seemed to be concerned that she did not want to travel to Kansas City 3 hours away from her home if she did not have to but I told her she had to.
Id. (emphasis added). The BIA never considered this difference in his story.
Third, Mr. Omwenga’s conduct was inconsistent with his version of events. If, in fact, just five days prior to the February 13 hearing he specifically advised Ms. Gi-tau to attend the hearing, it was improper for him to sign and file a motion to rescind with the BIA claiming his client did not attend the hearing because of a misunderstanding. Cf. Fed.R.Civ.P. 11(b)(3) (“By presenting to the court a pleading, written motion, or other paper — whether by signing, filing, submitting, or later advocating it — an attorney ... certifies that to the best of the person’s knowledge, information, and belief, formed after an inquiry reasonable under the circumstances ... the factual contentions have evidentiary support.”).[2]
Fourth, Mr. Omwenga stated in the motion to rescind that neither he nor Ms. Gitau received written notice of the February 13 hearing date. “Respondent [Ms. Gitau] was not given a copy of the notice for the hearing and neither did her counsel receive a copy of the notice.” J.A. at 232. The record does not support the second claim, as it indicates he received both oral and written notice of the hearing scheduled for February 13, 2006. Furthermore, Ms. Gitau herself never made an issue about a lack of notice for the February 13 hearing. Rather, she acknowledged receiving oral notice of the hearing on September 9, 2004, and her conduct shows she *911 was aware of the hearing date — her visit to the immigration officer on December 27, 2005, was for the specific purpose of preparing for the February 13 hearing because she had been told she would need to have her fingerprints taken prior to the hearing. The BIA never considered Mr. Omwenga’s unusual claims regarding lack of notice when determining which version of events to credit.
Fifth, Mr. Omwenga failed to attend the February 13 hearing himself, and his explanation for this failure is suspect. In the July 26 letter he submitted to the Office of Bar Counsel, he maintained he was planning to attend the hearing by telephone. “On February 13, I was at my office waiting to get a phone call from Judge Brahos regarding Ms. Gitau.... However, no call came from the Judge so I contacted the EOIR office in Chicago but was only told that the judge would call but the call never came and there is no indication the judge tried to call on that day.” Id. at 33. Ms. Gitau hired an immigration attorney, Kathryn Weber, to listen to the hearing tapes of all of Ms. Gitau’s removal proceedings and to provide an affidavit of what she heard. Ms. Weber stated Ms. Gitau appeared at every hearing in her proceedings except for the February 13 hearing, but Mr. Omwenga had failed to appear at hearings held on December 2, 2003, and February 13, 2006. Ms. Weber also stated that, at the hearing held on September 9, 2004, when the February 13 hearing date was set, Mr. Omwenga never made a motion to appear at the February 13 hearing by telephone, and the immigration judge (IJ) never offered him the option of appearing by phone. Ms. Weber stated it was clear from the transcript the IJ expected both lawyer Omwenga and Ms. Gitau to appear in person at the February 13 hearing. Id. at 25-26.
Sixth, Mr. Omwenga’s lack of competence should have been taken into consideration by the BIA when evaluating his credibility. On March 6, 2006, when he initially attempted to file the motion to rescind on Ms. Gitau’s behalf, the filing was rejected because he did not include proof as to the filing fee having been paid. In addition, the heading of the affidavit he submitted with the rejected motion indicated it was the affidavit of “Adama Sourang” rather than “Josphine Gitau.” Id. at 243.
Finally, the BIA failed to consider Mr. Omwenga had twice before been disciplined by the Office of Bar Counsel. One of the previous complaints against him involved misadvising a client about the need to attend a removal hearing. This other client was also deported in absentia and claimed he advised him not to appear at an immigration court hearing because his case had been continued. The Office of Bar Counsel found Mr. Omwenga provided the wrong hearing date to his client and admonished him.
In contrast to the numerous reasons for discrediting Mr. Omwenga’s story, there is only one inconsistency in Ms. Gitau’s statements, and there is a plausible explanation for it. As noted by the Court, the initial affidavit Ms. Gitau signed while Mr. Om-wenga was still representing her states she misunderstood Mr. Omwenga’s advice, while the subsequent affidavit she signed after obtaining new counsel specifically states Mr. Omwenga “told me not to go to the February 18th hearing until other dates were set as my case was still pending.” Id. at 125 (emphasis added). As the Court acknowledges, however, this single inconsistency is explained by the fact Mr. Omwenga himself prepared the first affidavit, and had every reason to include a self-serving statement in the affidavit.[3] *912 Thus, Ms. Gitau should not be faulted for this single inconsistency, as she had the right to trust her lawyer to represent her interests when preparing the affidavit for her signature. See Galvez-Vergara v. Gonzales, 484 F.3d 798, 802 n. 4 (5th Cir.2007) (indicating it is “reasonable for [an alien] to grant effective control of the case to his attorney”).
Furthermore, although the Court refers to “inconsistencies” in Ms. Gitau’s appeal documents, ante at 908-09, in fact the BIA referred to just this single inconsistency when it denied her motion to reopen. See Addendum at 28. Neither the Court nor the BIA identify another single inconsistency in Ms. Gitau’s version of events, nor can I find another single inconsistency which would justify the BIA’s decision to discredit Ms. Gitau.
In sum, without any explanation, the BIA accepted the incredible and dubious version of events set forth by Mr. Omwen-ga, and rejected the credible version of events set forth by Ms. Gitau without giving specific and cogent reasons for doing so. This constitutes an abuse of discretion. I would grant the petition for review and remand this matter to the BIA with instructions to reopen Ms. Gitau’s removal proceedings.

. Indeed, Mr. Omwenga appeared more than willing to engage in dubious behavior when proceeding before the immigration courts. Ms. Gitau stated under oath that when she spoke with Mr. Omwenga about having been deported in absentia for following his advice not to attend the February 13 hearing, "[h]e asked me if I knew of any doctor who would give me a sick note for that day[.]” J.A. at 126.

. Ms. Gitau stated under oath that when she spoke to Mr. Omwenga about having been *912 deported in absentia for following his advice not to attend the February 13 hearing, he stated: “You people don't understand, you shouldn't say that I asked you not to go to court. It’s acceptable to me if you accept having misunderstood me." Id. at 126.